UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT PIKEVILLE

| | |
|---|---|
| NVZ CAPITAL, LLC,<br><br>    **Plaintiff,**<br><br>V.<br><br>HOBERT GENTRY, *et al.*,<br><br>    **Defendants.** | CIVIL ACTION NO. 7:12-105-KKC<br><br><br>**MEMORANDUM OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on the motion for summary judgment filed by Bryan Wagner, Ashley Wagner, Triton Energy Coal, Inc. ("Triton Energy"), Hobert Gentry, and Roxana Transport, Inc. ("Roxana Transport") (collectively, "the Triton Parties"). (DE 57). The Triton Parties move for summary judgment on all claims against them as well as for judgment in favor of Bryan and Triton Energy on their counterclaim against NVZ Capital, LLC ("NVZ") and their third-party complaint against Daniel Bunn and KYZ Red Oak Resources, LLC ("Red Oak").[1] For the following reasons, the Court will grant in part and deny in part the Triton Parties' motion for summary judgment.

I.

This case involves a dispute over the wire transfer of $250,000 from NVZ to Triton Energy on April 16, 2012. NVZ, a Nevada limited liability company managed by Daniel

---

[1] While the Triton Parties move for judgment in their favor "regarding the counterclaim by Triton Energy and Bryan against Daniel Bunn, NVZ Capital LLC, and KYZ Red Oak Resources LLC[,]" no such counterclaim exists in this action. (DE 57-1 at 2.) Triton Energy and Bryan have, however, asserted a counterclaim against NVZ Capital, LLC (DE 35) and filed a third-party complaint against Daniel Bunn and KYZ Red Oak Resources, LLC (DE 12). Therefore, the Court will construe the Triton Parties' motion for summary judgment as seeking judgment in favor of Triton Energy and Bryan on their counterclaim and third-party complaint.

1

Bunn, invests in coal mining ventures. (DE 34 Am. Compl. at 2-3.) Triton Energy is a Kentucky corporation owned by Bryan Wagner that provides coal-related services in eastern Kentucky. (DE 34 Am. Compl. at 2; DE 57-1 Defs.' Mem. at 2.) Ashley Wagner, Bryan's wife, assisted in the general operations of Triton Energy. (DE 34 Am. Compl. at 2; DE 57-1 Defs.' Mem. at 2.) When hauling coal, Triton Energy sometimes engages the services of Roxana Transport, a trucking company owned by Ashley's father, Hobert Gentry. (DE 57-1 Defs.' Mem. at 3.)

In its complaint, NVZ alleges that defendants Gentry, Bryan, Ashley, and Triton Energy invited NVZ to invest $250,000 in a joint venture involving "a large tract of top-quality coal producing property" that could be leased for mining at a substantial profit. (DE 34 Am. Compl. at 3.) NVZ maintains that three meetings were held in early March 2012 to discuss the potential project. (DE 34 Am. Compl. at 4-5.) NVZ alleges that in two meetings attended by Bryan, Gentry, and Bunn, they asked NVZ to invest $250,000 in the future mining project. Bryan and Gentry allegedly proposed that if NVZ advanced $250,000, they would match that investment with $250,000 of their own assets, and NVZ would be a fifty percent (50%) owner of the joint venture. (DE 34 Am. Compl. at 4.) NVZ asserts that the same proposed project and details were discussed at a third meeting attended by Bryan, Ashley, and Bunn. (DE 34 Am. Compl. at 4-5.)

On April 16, 2012, NVZ wired $250,000 to a bank account held by Triton Energy. (DE 62-3). NVZ alleges that afterward, Defendants refused to provide NVZ with any information regarding its investment. (DE 34 Am. Compl. at 6-7.) Accordingly, on September 5, 2012, NVZ brought this diversity action against Gentry, Bryan, Ashley, and Triton Energy asserting state law claims of fraud, misrepresentation, conversion, and civil conspiracy relating to the $250,000 wire transfer. (DE 34 Am. Compl. at 7-11.) Defendants

2

answered, and Bryan and Triton Energy filed a counterclaim against NVZ alleging state law abuse of process. (DE 35). Bryan and Triton Energy contend that intermittently throughout 2012, Bunn offered to terminate NVZ's lawsuit against Defendants in exchange for a fifty-one percent (51%) share of Triton Energy. (DE 35 Defs.' Answer at 11-12.)

Bryan and Triton Energy then filed a third-party complaint alleging breach of contract, quantum meruit, and unjust enrichment against Bunn and Red Oak—another company owned and operated by Bunn. (DE 12). Bryan and Triton Energy contend that the $250,000 NVZ wired to Triton Energy in April 2012 was not an investment, but was in reality a payment for services Triton Energy had previously performed for Red Oak pursuant to a contract. (DE 12 Third-Party Compl. at 3.)

In or around November 2011, Red Oak and Triton Energy entered into a business relationship in which Triton Energy performed coal-related services at the Red Oak mining site. (DE 12 Third-Party Compl. at 3; DE 20 Fourth-Party Compl. at 3.) Triton Energy utilized the services of Roxana Transport to haul coal from the Red Oak site. (DE 20 Fourth-Party Compl. at 3; DE 57-1 Defs.' Mem. at 4.) According to Bryan and Triton Energy, in early April 2012, Bryan advised Bunn that Red Oak was late in payment on three invoices due for work performed by Triton Energy. (DE 12 Third-Party Compl. at 3.) The three invoices allegedly totaled $250,000.60. (DE 12 Third-Party Compl. at 3.) Based on prior business dealings between the parties, Bryan and Triton Energy contend that when they received the $250,000 wire transfer from NVZ on April 16, 2012, they believed it was payment for the three late invoices for services rendered to Red Oak. (DE 12 Third-Party Compl. at 4.) Finally, Bryan and Triton Energy claim that Triton Energy continued to perform additional services for Red Oak, totaling $391,633.75, for which payment was never received. (DE 12 Third-Party Compl. at 4.)

3

In response to the third-party complaint, Red Oak filed a counterclaim against Bryan and Triton Energy asserting six state law causes of action: (1) fraud, (2) misrepresentation, (3) conversion, (4) civil conspiracy, (5) breach of contract, and (6) unjust enrichment. (DE 17). Red Oak contends that Bryan and Triton Energy unlawfully removed seventy-five (75) truckloads of coal from the Red Oak mining site. (DE 17 Countercl. at 8). Red Oak contends that Bryan and Triton Energy had access to the coal as contractors on the site and were able to take truckloads from the facility without detection. (DE 17 Countercl. at 8.)

Lastly, Red Oak filed a fourth-party complaint against Gentry and Roxana Transport asserting state law claims of conversion, civil conspiracy, and unjust enrichment. (DE 20). Red Oak claims that Gentry and Roxana Transport conspired with Bryan and Triton Energy to unlawfully remove the seventy-five (75) truckloads of coal from the Red Oak site. (DE 20 Fourth-Party Compl. at 3-4.)

The Triton Parties then moved for summary judgment on all claims against them as well as for judgment in favor of Bryan and Triton Energy on their counterclaim against NVZ and their third-party complaint against Red Oak and Bunn. (DE 57). Before resolving the motion for summary judgment, the Court ordered the parties to show cause as to why the third-party complaint, its corresponding counterclaim, and the fourth-party complaint should not be dismissed for failure to comply with Federal Rule of Civil Procedure 14(a). (DE 81). The Triton Parties responded and asked this Court not to dismiss those filings as improper because they would be severely prejudiced at this stage of the litigation. (DE 82). Specifically, they argued that the third-party defendants have not filed a motion to dismiss and that the parties have completed discovery on those claims. (DE 82). While the Court recognizes the odd alignment of the claims in this case, it will not dismiss any of the

4

impleaded parties at this time. All parties necessary to resolve the instant disputes are currently before the Court, and the facts and parties in all of the asserted claims are inextricably intertwined. Therefore, to avoid inconsistent results, the Court will permit the third-party complaint, its corresponding counterclaim, and the fourth-party complaint to remain a part of this action. Accordingly, the Court will resolve the pending motion for summary judgment as to all claims asserted in this case.

## II.

**A. Standard of Review**

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The main inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986).

The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The movant may meet this burden by demonstrating the lack of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 322–25. Once the movant meets this burden, the burden shifts to the non-moving party to "set forth

specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 250 (internal quotation marks omitted). However, "the mere existence of a scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

The court cannot "weigh the evidence or determine the truth of any manner in dispute," *Stratienko v. Cordis Corp.*, 429 F.3d 592, 597 (6th Cir. 2005), and must draw all reasonable inferences in favor of the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that the evidence comes from disinterested witnesses.' " *Stratienko*, 429 F.3d at 597 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 151 (2000)) (alteration in original). However, courts may consider the affidavits or testimony of interested witnesses where that witness's testimony is uncontradicted. *See id.* at 597–98.

**B. NVZ's Wire Transfer of $250,000 to Triton Energy**

The primary dispute in the original complaint and the third-party complaint boils down to the factual issue of why, exactly, NVZ wired $250,000 to Triton Energy on April 16, 2012. In their motion for summary judgment, the Triton Parties argue that the affidavits of Bryan, Ashley, and Gentry show that the funds were wired to Triton Energy in payment for services performed for Red Oak and that the Triton Parties never solicited Bunn or NVZ for any joint venture. (DE 57-1 Defs.' Mem. at 2-4.) In response, Bunn, NVZ, and Red Oak (collectively, "the Bunn Parties") argue that their evidence shows that the $250,000 was

6

transferred because the Triton Parties asked Bunn and NVZ to invest in a nonexistent mining project.

The affidavits of Bryan, Ashley, and Gentry contain identical statements, and each party avers that "[t]here was no joint venture or mining project either offered or entered into between Triton Energy Coal, Inc. and Daniel Bunn or NVZ Capital, LLC." (DE 57-2 Bryan Aff. at ¶ 4; DE 57-3 Ashley Aff. at ¶ 4; DE 57-4 Gentry Aff. at ¶4). The affidavits of Bryan and Ashley further state that

> 8. In early April 2012, [Bryan] advised Bunn that Red Oak was late in payment on three invoices due for work performed by Triton Energy. These late invoices totaled $250,000.60, but Triton Energy was owed a total of $641,633.75 for the work it had performed at Red Oak's request.
>
> 9. On April 16, 2012, Triton Energy received a wire transfer of $250,000 from NVZ in payment of the late invoices owing to Triton from Red Oak. Red Oak previously paid Triton Energy for Services rendered on behalf of other entities owned and operated by Daniel Bunn.
>
> 10. For example, on February 1, 2012, Triton Energy accepted payment from Red Oak for Services rendered to Carbon Solutions, another company owned and operated by Bunn. Thus, based on prior practice, and the knowledge that [Red Oak] and NVZ are both instrumentalities of Bunn, this wire transfer was believed to be payment from Red Oak to Triton Energy for services performed corresponding to the three late invoices.

(DE 57-2 Bryan Aff. at ¶¶ 8-10; DE 57-3 Ashley Aff. at ¶¶ 8-10).

In opposition, the Bunn Parties rely on several documents to support their argument that the $250,000 was wired because the Triton Parties invited Bunn and NVZ to invest in a nonexistent joint venture. First, the Bunn Parties submit the affidavit of Suzie New, an employee of KYZ Energy Services who works directly for Bunn. (DE 62-1). New attests that she was "present at a meeting between Daniel Bunn, Bryan Wagner, and Hobert Gentry in

7

2012 in which Wagner and Gentry discussed with Daniel Bunn the plans to invest in another mine project" and that Bryan presented Bunn with a "License Agreement" concerning the proposed project. (DE 62-1 New Aff. at ¶¶ 11-12.) Additionally, New's affidavit references billing records between Triton Energy and Red Oak and states that from February 1, 2012 to May 16, 2012, Red Oak paid Triton Energy $157,034.69 for services rendered and that Red Oak did not receive any additional invoices from Triton Energy for work performed in or before April 2012. (DE 62-1 New Aff. at ¶¶ 6-9.)

The Bunn Parties also present the "License Agreement" and billing records referenced in New's affidavit. (DE 62-4; 62-5). The seven-page "License Agreement" is between Triton Energy and Timberlands, LLC and is dated April 20, 2012. (DE 62-4). It states that Triton Energy would be licensed to mine coal on property known as "Timberland's (sic) First Creek 590.82 Acre Surface Tract" in Perry County, Kentucky. (DE 62-4 License Agree. at 1.) The Bunn Parties point out that the "License Agreement" is signed by Bryan Wagner and Hobert Gentry on behalf of Triton Energy, but the document is not signed by Timberlands, LLC. (DE 62-4 License Agree. at 5.) They have also submitted documents reflecting the billing and payment history between Triton Energy and Red Oak from January to May 2012. (DE 62-5). The Bunn Parties argue that the billing records show that Triton Energy was paid every two weeks from February 1, 2012 to the middle of May 2012, and that the invoiced amount and payment amount always matches. Thus, the Bunn Parties contend that there is no documentation of the three invoices Bryan allegedly gave to Bunn in early April 2012 that totaled $250,000.60. Finally, the Bunn Parties offer a "Remote Wire Transfer Request" form signed by Daniel Bunn which authorizes $250,000 to be transferred from NVZ to Triton Energy. (DE 62-3). They contend that this document shows that the money was wired by NVZ and not another company.

After reviewing the parties' evidence, the Court finds that a reasonable juror could conclude that NVZ wired the $250,000 to Triton Energy because Bryan, Gentry, and Triton Energy solicited NVZ to invest in a joint venture. It is for a jury to determine why NVZ wired the funds, and, therefore, summary judgment in favor of Bryan, Gentry, and Triton Energy is inappropriate.

However, the Court finds that summary judgment is proper as to all claims asserted against Ashley. The Triton Parties have submitted Ashley's affidavit, and the Bunn Parties have not presented any evidence to rebut her statements. Accordingly, because Ashley's affidavit is uncontradicted, summary judgment in her favor is appropriate.

**C. Abuse of Process and Breach of Contract**

In their counterclaim to the original complaint, Bryan and Triton Energy assert a single claim against NVZ for state law abuse of process, and, in their third-party complaint, Bryan and Triton Energy assert claims of breach of contract, quantum meruit, and unjust enrichment against Red Oak and Bunn. (DE 12; DE 35). In moving for summary judgment on their on these claims, however, Bryan and Triton Energy summarily argue that they are entitled to judgment as a matter of law and do not meaningfully develop any argument for this Court's review. They have not explained the elements of any of these claims under Kentucky law or cited any case law in support of their position. *See United States v. Lara*, 590 F. App'x 574, 586–87 (6th Cir. 2014); *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997). "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson*, 125 F.3d at 995–96 (alterations in original) (quoting *Citizens Awareness Network, Inc. v. U.S. Nuclear Regulatory Comm'n,* 59 F.3d 284, 293–94 (1st Cir. 1995)).

9

Accordingly, because Bryan and Triton Energy have offered "no real analysis" of their state law claims against NVZ, Red Oak, and Bunn, summary judgment is inappropriate. *McPherson*, 125 F.3d at 995.

**D. Theft of Seventy-Five (75) Truckloads of Coal from Red Oak**

In its counterclaim to the third-party complaint, Red Oak alleges that Bryan and Triton Energy unlawfully removed seventy-five (75) truckloads of coal from the Red Oak mining site, and, in its fourth-party complaint, Red Oak asserts that Gentry and Roxana Transport conspired with Bryan and Triton Energy to steal the coal. (DE 17; DE 20). In their motion for summary judgment, Bryan, Triton Energy, Gentry, and Roxana Transport argue that the affidavits of Bryan and Gentry demonstrate that no coal was wrongfully diverted from the Red Oak mine. (DE 57-1 Defs.' Mem. at 4-5). Although Bryan and Gentry's affidavits acknowledge that Roxana Transport was employed by Triton Energy to haul coal from the Red Oak mine, both affidavits contain identical statements denying engaging in a conspiracy with "any other entity or individual to commit any tortious act, including . . . the theft of money or coal from Daniel Bunn, NVZ Capital, LLC, KYZ Red Oak Resources, LLC, or any other entity owned by or affiliated with Daniel Bunn." (DE 57-2 Bryan Aff. at ¶¶ 5, 7; DE 57-4 Gentry Aff. at ¶¶ 5, 8.)

In response, Red Oak submits the affidavit of Randall Robertson, an employee of Bryan and Triton Energy who worked at the Red Oak mine from January to May of 2012. (DE 62-2 Robertson Aff. at ¶¶ 3-4.) Robertson's affidavit states that he "personally observed my employer, Triton Energy Coal, under the direction of Bryan Wagner, remove over 75 truckloads of coal from the KYZ Red Oak resources mine, which was not reported to KYZ Red Oak in order to conceal the taking of this coal by Triton Energy Coal without paying for it." (DE 62-2 Robertson Aff. at ¶ 6.)

10

Drawing all reasonable inferences in favor of Red Oak, the Court finds that the record contains sufficient evidence from which a reasonable juror could conclude that Bryan and Triton Energy unlawfully removed coal from the Red Oak mining site and that Gentry and Roxana Transport conspired with Bryan and Triton Energy to steal the coal. Significantly, the sole evidence presented by the movants is their own affidavits, which is contradicted by the affidavit of Randall Robertson. Robertson's affidavit expressly states that he witnessed Triton Energy, at the direction of Bryan, unlawfully divert coal from the Red Oak mine. (DE 62-2 Robertson Aff. at ¶ 6.) Further, because Bryan and Gentry's affidavits acknowledge that Roxana Transport was employed by Triton Energy to haul coal from the Red Oak mine, it is reasonable to infer that Roxana Transport was the actual entity Robertson observed remove the coal. (DE 57-2 Bryan Aff. at ¶ 7; DE 57-4 Gentry Aff. at ¶ 8.) Therefore, on this record, summary judgment on Red Oak's counterclaim to the third-party complaint and fourth-party complaint is inappropriate.

## III.

Accordingly, for the reasons stated above, **IT IS ORDERED** as follows:

1. The motion for summary judgment filed by Bryan Wagner; Ashley Wagner; Triton Energy Coal, Inc.; Hobert Gentry; and Roxana Transport, Inc. (DE 57) is **GRANTED IN PART and DENIED IN PART** as follows:

    a.    The motion is **GRANTED** with respect to all claims against Ashley Wagner, and Ashley Wagner is **DISMISSED** as a defendant in this action;

    b.    The motion is **DENIED** as to all other claims asserted against all other parties; and

2. This matter is **SCHEDULED** for a telephonic status conference on **September 9, 2015 at 2:00 p.m.** The parties are directed to call in using the following information:

    Toll Free Number:    888-684-8852

    Access Code:         6823688

Please dial in at least a couple of minutes before the conference is scheduled to begin.

Dated August 27, 2015.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY